WILLIAM COLE, Respondent, v. WAKE JONES, et al., Appellants.

Kansas City Court of Appeals, November 20, 1911.

MASTER AND SERVANT: Trap Door: Safe Place to Work: Assumption of Risk. A servant entered the service of a master as a cook for a lunch counter in a saloon where the counter was about five feet from the wall, against which was a narrow stove, some shelving and cooking utensils, and in the floor between the wall and the counter was a trap door. The servant and a co-employee were in direct charge and operation of the lunch counter and of the space between the counter and the wall, and used the trap door daily to get supplies from the cellar, and had been for a long time. The servant started to wait on a customer and in turning back to the stove, he stepped into the trap door, which his co-employee had just negligently opened, and fell to the cellar floor. It was *held* that the master was not liable for failing to furnish a safe place in which to work, and that the servant assumed the risk.

Appeal from Buchanan Circuit Court.—*Hon. Wm. D. Rusk*, Judge.

REVERSED.

*Duncan & Utz* for appellants.

*Frank B. Fullerson, Joshua A. Graham* and *Hugh C. Smith* for respondent.

ELLISON, J.—Defendants were the proprietors of a saloon and lunch counter in St. Joseph, and plaintiff, who was their employee, was injured by falling through an open door in the floor to the cellar below. He brought this action for damages and recovered in the trial court.

It appears that there was a bar on the north side of the room and a lunch counter on the south side and that the counter was between five and six feet from the south wall where were a stove, a water cooler, some cooking utensils, shelves, and a sink, stretched as narrowly as may be along the wall. Between these and the counter was the trap door in the floor, about three and one-half feet wide by five feet long, and when open it stood straight against the stove next to the wall. The house, at least the lunch counter part, was open for business all night and there were two sets of men, two in each, who attended the counter, one in the day time and one at night. Plaintiff and one Mains were the night men. Plaintiff was the cook and also did other general work in such a place. Mains, as best we can make out of the evidence, was his helper, though plaintiff denied being a boss. Hot and cold lunches were served, and a part of the supplies for these was kept in the cellar. It was the duty of the day men to bring up and peel two cans of potatoes for the use of the night men and it was the duty of the latter to do the same thing for the day men. Some time after one o'clock at night in January, 1910, when the lunch custom was quiet, plaintiff and Mains were peeling potatoes and it was found necessary to bring more up from the cellar. At about that time some one came in and called for a hot fish sandwich, and plaintiff proceeded to wait upon him. As he turned from the counter to the stove to warm the fish, the trap door was open and he stepped in and fell to the cellar floor. Just what plaintiff and Mains were doing at the moment when

the customer came in, is not clear. About a great deal of detail, of which plaintiff should have been positive, he seems uncertain. But in the view we take of the case, this is not of great importance. It may be stated as certain that the trap door was not open when plaintiff turned his back and approached the customer. All agree that, if open, it would stand straight against the stove and had to be held up to prevent falling shut. It seems to us manifest that after plaintiff had begun to wait on the customer, Mains had raised the door to go after more potatoes. He says he had a lamp in one hand and was holding the door with the other. There is no doubt that if there was any negligence, it was that of Mains. He testified, however, that when he raised the door he warned plaintiff. But conceding he was negligent, it would be the negligence of a fellow servant for which defendant would not be liable.

So in this state of facts plaintiff bases his case alone on the negligence of defendants, as masters, in failing to furnish him a reasonably safe place in which to work. There is no pretense that there was any defect in the door, or its attachments, or its operation. Defendants had a right to conduct their business in the manner they wished, so long as they did not deceive or mislead their servants. It is true they cannot relieve themselves of negligence and that the servant never assumes the risk of such negligence. But negligence is a relative term. [Coin v. Lounge Co., 222 Mo. 488, 507.] It implies a neglect of some duty. In this case plaintiff was in charge of the part of the premises where he was hurt, that is to say, he was in immediate charge of it, and he and his co-employee operated it. He had been engaged at it for "a long time." It was the same the night he was hurt as it was the day he began. He knew what it was and was in daily operation. He had as complete control and was in as undisturbed operation of the

place as the ordinary domestic cook in a household kitchen, and has no more right to complain of this accident than such a person would for a mishap in the kitchen occasioned by a place or article over which he or she had control and of which they were in daily use. It was the ordinary risk incident to the business, at that place, that plaintiff took, of falling into the cellar by the negligence of himself or his fellow servant or both. He assumed that risk. [Coin v. Lounge Co., 222 Mo. 488, 512; Steinhauser v. Spraul, 127 Mo. 541; Marshall v. Hay Press Co., 69 Mo. App. 256.]

Defendants' demurrer to the evidence should have been sustained, and the judgment will be reversed. All concur.