## ANNALEE POWERS, Appellant, v. LOOSE-WILES COMPANY, Respondent.

### Kansas City Court of Appeals, March 1, 1917.

1. **ASSUMPTION OF RISK: Manufacturing Candy: Breaking Chocolate.** In manufacturing chocolate candy, the manufacturer used a large kettle three feet in diameter, in the center of which was a shaft rising above the rim of the kettle, the top of which was pyramid shape. An employee took up slabs of chocolate and broke them over the pyramid top of the shaft, the pieces falling into the kettle where they were melted. Plaintiff with several other women, took pans and drew from the faucet, at the bottom of the kettle, the melted chocolate as it was needed. In doing so, she would be in a stooping position, the side of her head being above the rim of the kettle. On the occasion of her injury she was in that position when a piece of broken chocolate flew over the rim of the

kettle and struck her on the neck. She had been engaged in the work in the same way for two years. She saw that occasionally pieces of chocolate went over the rim of the kettle. No one was ever hurt before and no complaint was made. It was *held* that she assumed the risk and could not recover.

2. **NEGLIGENCE: Duty: Assuming Risk: Service: No Complaint.** Negligence is a breach of duty and when no duty is owing there is no negligence. An employee who knows the method in which the master conducts his business and enters into and continues in his employment, without complaint, assumes the risk of injury from that mode and the master is not negligent.

Appeal from Jackson circuit Court.—*Hon. Thos. J. Seehorn,* Judge.

AFFIRMED.

*Rader & Rader* and *E. H. Gamble* for appellant.

*O. C. Mosman* for respondent.

ELLISON, P. J.—Plaintiff was an employee in the defendant's service and suffered personal injury which she charges to its negligence. She instituted this action to recover damages. At the close of the evidence in her behalf the trial court gave an instruction in the nature of a demurrer and she thereupon took a nonsuit with leave to move to set the same aside. She then made that motion, basing it upon the statement therein, that "plaintiff's evidence was sufficient to present to the jury an issue of fact as to whether defendant's negligence was not the sole cause of plaintiff's injury."

It appears that plaintiff had been employed for more than two years in the candy department of defendant in the work of drawing hot chocolate from a large kettle, sometimes called a "beater," and carrying it to another room where the process of making it into candy for the market was begun. This kettle was three feet in diameter and in the center was a shaft with its top (pyramid in shape) a few inches above the rim of the kettle. Slabs or bars of chocolate were between one and two inches thick, eight inches wide and fifteen or

eighteen inches long. In order to melt them, a man (employee) would take up a bar and break it over the apex of the pyramid shaped top of the shaft, the pieces falling into the kettle. Plaintiff, with many other women employees, drew the melted chocolate from the spout or faucet at the bottom of the kettle by raising "a gate or lever," so constructed that when not being held, it would automatically close down. Each of these women would hold a pan under the spout with one hand and raise the lever with the other, and while in this partially stooped position, the side of their heads would be above and near the kettle. At the time of her injury plaintiff was in that position when the man broke one of the slabs over the pyramid point of the shaft and a piece about four or five inches long and nearly as wide, and triangular in shape, flew over the rim of the kettle and struck her on the neck, inflicting the injury of which complaint is made.

Plaintiff testified that she had observed during all of her two years of service that pieces of the broken chocolate would go over the top of the kettle onto the floor and that she and the others frequently picked them up and dropped them in the kettle. She stated that on the day she was hurt the chocolate was being broken as it always had been, and at the time she approached the kettle when she was hurt, "there were pieces flying over on the floor; but I thought I could get there and get my chocolate without being hit, as I had done before; and I raised the lever to get my pan full, and when I stooped down a piece of the chocolate struck me right here on the neck." She had never been struck before and the evidence was that no other employee had ever been hurt.

The negligence charged in the petition was that defendant adopted an unsafe method for breaking the chocolate in having its employees break the slabs over the pyramid top of the standard.

It thus appears from the evidence in plaintiff's behalf that the breaking of the chocolate into the kettle had been done during her entire service of more than

two years, exactly as it was done when she was hurt. She saw such was the mode when she entered the service, and she saw it continued daily until the day of the accident. It never occurred to her, or any one else that it was a dangerous mode, and of course no complaint or promise was ever made in regard to it; and, in fact, no one of the large number similarly engaged, was injured in the several years the work was carried on; and on the occasion of her injury as intimated above, she saw the breaking going on as it had been. It seems manifest that if there was any danger in the mode, she knew it, accepted it and took the risk. If there was any danger it was inherent in the business carried on as it was, in the usual way, with her knowledge. [Winkler v. St. Louis Basket Co., 137 Mo. 394; Chrismer v. Bell Tel. Co., 194 Mo. 189, 214; Coin v. Lounge Co., 222 Mo. 488, 512; Charlton v. Railroad, 200 Mo. 413, 435; Jewell v. Bolt Co., 231 Mo. 176, 194; Gleeson v. Excelsior Mfg. Co., 94 Mo. 201; Cole v. Jones, 159 Mo. App. 472; Brandt v. Brewery Co., 159 Mo. App. 568, 573.]

In a late case in the Supreme Court (Patrum v. Railroad, 259 Mo. 109, 125) Judge FARIS has distinctly stated the rule of assumption of risk to be almost universal and that it is being constantly applied in this State, citing, Williams v. Railroad, 119 Mo. 316, 323; Jackson v. Railroad, 104 Mo. 448; Bradley v. Railroad, 138 Mo. 293, 303, 304; and Czernicke v. Ehrlich, 212 Mo. 386, 395. These cases are to the effect that if one, through the course of his employment, is aware of the master's mode of doing the business and continues without protest to, or promise from, the master, he assumes the risk and the master is not guilty of negligence.

In Williams v. Railroad, just cited, Judge McFAR-LANE says: "The risks assumed must also depend upon the character of the work, and other circumstances, including knowledge on his part of the condition of the instrumentalities he is required to use. As said by BLISS, J., 'Much of the work of the country is done without the employment of the best machinery, or the most competent men, and it would be disastrous, if those

prosecuting it, were held to insure the safety of all who enter their service. If persons are induced to engage in ignorance of such neglect, and are injured in consequence, they should be entitled to compensation; but if advised of it, they assume the risk;' Devitt v. Railroad, 50 Mo. 305, and cases cited.] This declaration is, of course, subject to the qualification that the master has not misled the servant by promises to repair defects.''

These and similar cases cannot be distinguished from the one before us, and hence we must approve the ruling of the trial court.

When it is said that the servant has assumed the risk, we, in the same breath, assert that the master is not guilty of negligence in an actionable sense. For negligence is a breach of duty owing from the master to the servant. Assumption of risk arises by contract between them and if the servant impliedly, or expressly, enters into a contract with the master concerning the mode in which the work is to be done and agrees that he will take the risk of danger from that mode, there is no negligence, because the duty, if there was one, has been waived by the servant. It may be that in some cases there has been an improper or confused application of the expression, ''The servant never assumes the risk of the master's negligence.'' This rule has been here and there applied in such way as to beg the question. Certainly the servant does not assume the risk of the master's negligence, but there should be no mistake made as to whether the master has been guilty of negligence in the circumstances of the given case.

The judgment is affirmed. All concur.