## H. T. SPURLING, Respondent, v. LaCROSSE LUMBER COMPANY, Appellant.

**St. Louis Court of Appeals.   Opinion Filed April 6, 1920.**

1. **NEGLIGENCE: Actionable Negligence: Elements.** Negligence is a relative term, and in order to show one guilty of actionable negligence it must first be shown that he owed some duty to another which he failed to perform and that his failure resulted in injury to the other.

2. **TRIAL PRACTICE: Negligence: Question for Court when Facts are Undisputed.** Whether negligence is a question for the court or the jury must be determined by the facts of the particular case, and, when the facts are undisputed or so clearly proven as to admit of no doubt, it is the duty of the court to apply the law without submitting the question to the jury.

3. **NEGLIGENCE: Trial Practice: Evidence: No act of Negligence Shown: Duty of Trial Court to Direct Verdict.** In an action for the value of a mule alleged to have been killed through negligence in directing the driver of plaintiff's team to go to a brick yard and procure cement for a customer for whom plaintiff agreed to haul  it, etc., evidence reviewed and *held* that the facts are such that all reasonable men must draw the same conclusion from them, namely, that the defendant lumber company was guilty of no act of negligence, and therefore the question of negligence was one of law for the court, and consequently it was the duty of the court to have directed the jury accordingly.

Appeal from the Circuit Court of Audrain County—*Hon. E. S. Gantt*, Judge.

REVERSED.

*Fry & Fry* for appellant.

(1) What constitutes actionable negligence is a question of law. Yarnell v. St. Louis, Kansas City & Northern Ry. Co., 75 Mo. 575; Richmond v. The Missouri Pacific Ry. Co., 133 Mo. App. 463; Booker v. Southwest Missouri R. R. Co., 144 Mo. App. 273; Davison v. Royal Amusement Company, 144 Mo. App. 564; Creason v. St. Louis

Iron Mountain & Southern Ry. Co., 149 Mo. App. 223.
(2) Mere directions as to conditions under the circumstances of this case was not actionable negligence. The plaintiff's servant was not compelled to go to the plant and by exercise of ordinary care could have avoided the accident, the danger, if any was apparent. Gray v. Wabash Railroad Company, 179 Mo. App. 541; Wheat v. City of St. Louis, 179 Mo. 581-582; Jackson v. Butler, 249 Mo. 375. (3) There must be a duty to protect and a failure to perform the duty and an injury resulting from such failure and an absence of distinct intention to produce the injury which followed. Where there is no duty there is no liability. Ward v. Kellogg, 164 Mo. App. 81; Richmond v. The Missouri Pacific Railway Co., 133 Mo. App. 463; Booker v. Southwest Missouri Railroad Co., 144 Mo. App. 273; Foley v. McMahon, 114 Mo. App. 443; Vaughn v. William J. Lemp Brewing Co., 152 Mo. App. 48; Jarrell v. Blackbird Block Coal Co., 154 Mo. App. 552; Cole v. Wake Jones, 159 Mo. App. 472; Morgan v. Oronogo Circle Mining Co., 141 S. W. 735; Only when defendant has reason to anticipate. Hall v. Missouri Pacific Railway Co., 219 Mo. 553; Gallaher v. City of Tipton, 133 Mo. App. 557. (4) The negligent act of the defendant charged in the petition must be the proximate cause of the injury. Saxon v. The St. Louis Transfer Co., 145 Mo. App. 693; Foley v. McMahon, 114 Mo. App. 442; Lyman v. Dale, 156 Mo. App. 427; Deschner v. St. Louis' Meramec River R. R. Co., 200 Mo. 310; Bokamp v. Railroad Co., 123 Mo. App. 270; Frisbie v. Fidelity & Casualty Co., 112 S. W. 1024; Smart v. Kansas City, 91 Mo. App. 586; Christy v. Hughes, 24 Mo. App. 275; Jackson v. Butler, 249 Mo. 366; Hudson v. Wabash Western Ry. Co., 101 Mo. 35; Sira v. Wabash R. R. Co., 115 Mo. 127; Henry v. St. Louis, Kansas City & Northern Ry. Co., 76 Mo. 288. (5) One is liable only for the natural or probable results of the negligent act. An injury which could not have been foreseen nor reasonably anticipated as the probable result of the act is not actionable. Brubaker v. Kansas City Electric Light Co., 130

Mo. App. 439; Holt v. Southwest Missouri Electric Ry. Co., 84 Mo. App. 443; Saxon v. St. Louis Transfer Co., 145 Mo. App. 693; Fuchs v. City of St. Louis, 167 Mo. 620. (6) When the wrongful act of one person affords only the occasion for the wrongful acts of another it is too remote as to the first wrong doer. American Brewing Association v. Talbot, 141 Mo. 674; Saxon v. St. Louis Transfer Co., 145 Mo. App. 693; Smart v. Kansas City, 91 Mo. App. 593; Sullivan v. Jefferson Ave. Ry. Co., 133 Mo. 1; Frank v. Charles J. Free, 190 Mo. App. 73; Hight v. American Bakery Company, 168 Mo. App. 431. (7) Contributory negligence. There can be no recovery when plaintiff's negligence contributed or lead to the injury. Meyers v. Chicago, Rock Island & Pacific Ry. Co., 103 Mo. App. 268; Hudson v. Wabash Western Ry. Co., 101 Mo. 35; Jackson v. Butler, 249 Mo. 369; O'Donnel v. Patton, 117 Mo. 13. Where the conditions were apparent and might have been avoided. Williams v. St. Joseph Artesian Ice Co., 214 S. W. 385; Fowler v. Randall, 99 Mo. App. 407; Wheat v. City of St. Louis, 179 Mo. 572; Brady v. City of St. Joseph, 167 Mo. App. 423; Woodson v. Met. Street Ry. Co., 224 Mo. 701; Kaiser v. City of St. Louis, 185 Mo. 374; Coffey v. City of Carthage, 186 Mo. 585; Cohn v. City of Kansas City, 108 Mo. 393.

*R. D. Rogers* for respondent.

(1) Appellant's brief does not comply with the requirements of Rule 18 of this court. Consequently it presents both for review. Greensfelder v. Witte, 189 Mo. App. 584; Cavanaugh v. Dyer, 215 S. W. 481; Hubbard v. Wabash Railroad, 193 S. W. 579. (2) The defendant in order to sell forty sacks of cement, by doing which it would realize a profit and retain a valued customer, directed that plaintiff's team and wagon be driven to where the cement was stored at the brick plant. In doing so, it owed the plaintiff the duty not to send his team into a place of danger. If it violated its duty and

sent the team under the guidance of its servant, Williams, into a place not reasonably safe (and the evidence shows it did), and as the result thereof, the mule was killed, then defendant is liable. Duncan v. Railroad, 152 Mo. App. 284; Martin v. Maxwell, 158 Mo. App. 184; Glaser v. Rothschild, 221 Mo. 180; Nephler v. Woodward, 200 Mo. 179; Shaw v. Goldman, 116 Mo. App. 332; McCullen v. Fishell, 199 S. W. 439; Hubbard v. Wabash, 193 S. W. 584; Murrell v. Smith, 152 Mo. App. 95. (3) Under the evidence in this case, construed as it should be in its most favorable light for plaintiff, it cannot be said as a matter of law that the injury to plaintiff's mule arose from a cause which Kelso, acting as a man of ordinary prudence, could not reasonably have anticipated when he sent plaintiff's team to the brick plant, under the guidance of his man Williams, to get the cement. Dean v. Railroad, 199 Mo. 386; Woodson v. Railway, 224 Mo. 685; Murrell v. Smith, 152 Mo. App. 95; Martin v. Motor Company, 158 Mo. App. 188. (4) The question as to whether the plaintiff's agent, Wallace Harvey was guilty of contributory negligence which barred plaintiff's right to recover, was under the evidence one of fact for the jury and not of law for the court. Duncan v. Railroad, 152 Mo. App. 284; Booker v. Railroad, 144 Mo. App. 273; Deschner v. St. Louis R. R. Co., 200 Mo. 310; Nephler v. Woodward, 200 Mo. 179; Defiance Water Co. v. Olinger, 44 N. E. 238.

BECKER, J.—Plaintiff instituted this action against the LaCrosse Lumber Company and the A. P. Green Fire Brick Company, corporations, for the value of a mule alleged to have been killed through the negligence of the defendants. Plaintiff obtained a judgment against the lumber company in the sum of $240, the jury returning a verdict in favor of the other defendant. The lumber company in due course appealed.

It appears that the plaintiff was the owner of a mule team which he had used for several years on the public roads doing general hauling as well as having used the team for general farm work, such as pulling reapers,

binders and work about threshers. Appellant is in the lumber business in the city of Mexico and deals in building materials, including cement. The defendant, brick company owns and operates a large fire brick plant in the city of Mexico distant one-half mile or more from the said lumber company. The brick company used large quantities of cement and frequently bought its cement through the defendant lumber company and on occasions when the lumber company ran short of cement it would borrow from the brick company and return a like amount when it received a shipment. On several occasions when the lumber company had in this manner borrowed cement it had sent its own team in charge of one of its employees to the brick company's plant to get it.

On the occasion in question three teams belonging to farmers living near each other outside of the city of Mexico had gone into town loaded with wheat. The owner of one of said teams telephoned plaintiff, who was in town, and asked him to tell the driver of plaintiff's team to go to the defendant lumber company and bring him forty sacks of cement, and asked that plaintiff have his team go along and help haul part of the cement. To this plaintiff agreed and in due course arranged for all three of said teams to go to the lumber company for the purpose of getting the forty sacks of cement. Plaintiff's team was driven by a young man about 19 years old. When the three wagons arrived at the lumber yard they found, upon inquiry, that the lumber company had no cement on hand and one Kelso, manager in charge of the lumber company, arranged to borrow forty sacks of cement from said brick company, and directed the drivers of the teams to go to the defendant brick company's plant to get the cement and sent with them a negro employee for the purpose of showing them where to find the cement and to help load same into the wagons. Kelso was asked if there was a good road to the brick plant and in reply stated that the road was good. Upon arriving at the brick plant the lumber company's employee entered the office and obtained permission and direction as to where

to get the cement and proceeded in advance of the teams to show them the place where the cement was kept. . In order to reach the shed where the cement was stored on the premises of the brick company it was necessary for the teams to cross a bridge some eight feet in width and some twelve to fourteen feet in length, which spanned a narrow cut some five or six feet deep. In this cut was a railroad switch track or spur to one of the buildings of the defendant brick company. The teams passed in safety over this bridge to the place where the cement was loaded, and after loading, two of the wagons with the cement started on their return trip through the premises of the brick company, plaintiff's team being preceded by the other two. In endeavoring to recross the bridge one of the mules attached to plaintiff's wagon took fright and crowded the other mule off the bridge causing him to fall into the cut resulting in injuries from which he died.

Plaintiff's testimony tended to show that on the east side of the bridge where the mule fell off there was no guardrail, while there was testimony on behalf of the defendant brick company that there had at all times been a guardrail on that side of the bridge and that the guardrail was up the day before, and that immediately after the mule had fallen off the bridge and before he had been removed from the cut, a two by four, some fourteen or sixteen feet long, broken into two pieces, was found lying in the cut and between the mule and the bridge.

Plaintiff introduced testimony to the effect that his team of mules was gentle and well broken; that there were a number of kilns on the premises of the brick company emitting smoke and fire; that there was also a building on said premises filled with machinery which made considerable noise while being operated and caused to be emitted from such building great quantities of dust; that in order to reach the shed in which the cement was kept it was necessary to drive the teams close to such kilns and building containing said machinery. There is further testimony adduced on behalf of the plaintiff to

the effect that the young man driving plaintiff's team of mules was a good and capable driver.

One E. E. Marshall, a witness for plaintiff, testified that he was driving the team for the man who had ordered the cement and that it was he (Marshall) who had the conversation with Kelso, the lumber company's manager, regarding getting the cement; that Kelso told him, in answer to his inquiry, that he had no cement on hand, but that he could arrange to get it at the brick plant. "He told me it was east of town, out there, and I said,. 'Is it a right smart ways?' and he said, 'No, it is a good road to it and good place to get the cement,' and everything and he said, 'I will send a man to load the cement for you.' I said I didn't care about driving away down there and he said, 'Well, you will save time. If I have to go with my wagon I will have to make two trips and with your wagons you can get it and save time by it.' That is how we happened to go."

"Q. What did he say about the teams?" "A. Nothing. I took it for granted by him saying that it was a good road and good crossing that there was a nice place to get to it and we would have no trouble."

"Q. What else did he say?" "A. He said he would send a man to show us the way and load the cement for us."

"Q. Whom did he send?" "A. He sent a colored man. I don't know what his name was."

According to Kelso's testimony, in order to accommodate his customer he had made arrangements with the brick company to let his customer have the required amount of cement and asked Marshall (the customer's driver) to go down to the brick company and get it. Kelso further testified that the transaction as to the cement was a sale from the lumber company to their customer.

The defendant lumber company offered an instruction in the nature of a demurrer at the close of plaintiff's case and again at the close of the entire case, each of which was refused.

Upon the state of facts thus disclosed the appellant lumber company insists that no case was made for plaintiff and that its demurrer to the evidence should have been sustained. This raises the question as to whether defendant was negligent in its duty toward plaintiff. "Negligence is a relative term and in order to show one guilty of actionable negligence it must first be shown that he owed some duty to another which he had failed to perform and that his failure resulted in injury to the other. Shaw v. Goldman, 116 Mo. App. 332, 92 S. W. 165; Loehring v. Construction Co., 118 Mo. App. 163, 94 S. W. 747; Wencker v. M. K. & T. Ry. Co., 169 Mo. 592, 70 S. W. 145." Creason v. Ry. Co., 149 Mo. App. 223, l. c. 228, 130 S. W. 445.

And it has been held that whether negligence is a question for the court or the jury must be determined by the facts of the particular case. "Negligence is in all cases in a certain sense a question of fact for the jury; that is, it is for the jury to determine, whether the facts bearing upon the question exist or not. But when the facts are undisputed or are so clearly proved as to admit of no doubt, it is the duty of the court to apply the law without submitting the question to the jury. This involves no invasion of the province of the jury, nor any infringement of their legitimate functions, no more than when the court passes upon a demurrer to the evidence, or on motions for new trials upon the ground of the want of any evidence to sustain the verdict of a jury." [Barton v. Ry. Co., 52 Mo. 253, l. c. 258.]

We are unable to see wherein the defendant lumber company breached any duty it may have owed plaintiff, nor can we see how ordinary prudence could suggest that the act of the defendant lumber company complained of would probably result in injury. Taking the evidence in the light most favorable to plaintiff, together with all reasonable inferences to be drawn therefrom, we have a given state of facts concerning which reasonable men could not fairly differ upon the question as to whether there was negligence or not. We are satisfied and so

hold that the facts in this case are such that all reasonable men must draw the same conclusion from them, namely, that the defendant lumber company was guilty of no act of negligence and therefore the question of negligence was one of law for the court, and consequently it was the duty of the court to have directed the jury accordingly.

It results that the case should be reversed as to the defendant, LaCrosse Lumber Company, and it is so ordered.

*Reynolds, P. J.*, and *Allen, J.*, concur.