## McHUGH v. NATIONAL LEAD CO.
### No. 1956.

District Court, E. D. Missouri, E. D.
April 18, 1945.

18

Harvey B. Cox and George E. Heneghan, both of St. Louis, Mo., for plaintiff.

Moser, Marsalek & Dearing, and John S. Marsalek, all of St. Louis, Mo., for defendant.

HULEN, District Judge.

Plaintiff obtained a judgment against defendant, based on a jury verdict. This case is now before the court on defendant's motion for judgment in accordance with motion for directed verdict. Defendant's position is that the evidence failed to make a submissible case of negligence.

There is no substantial conflict on the controlling facts. Defendant employed Leonard Construction Company, an independent contractor, to install and erect a sulphur burner tank on its premises in St. Louis County, Missouri. The tank was completed about April 1, 1941. Defendant

then started use of the tank. In "two or three weeks" defects developed which necessitated a rebuilding of the tank according to a changed design. Early in the morning of the fourth day of June, plaintiff's husband, engaged in removing brick work as a laborer and an employee of a sub-contractor who had been employed by Leonard Construction Company, was killed as a result of a gas explosion in the sulphur burner. The case was submitted on the theory that defendant was negligent in failing to designate or mark a certain pipe which led to the sulphur burner as a conveyor of natural gas.

The sulphur burner was cylindrical in shape, approximately thirty feet in height and fifteen feet in diameter. The inner construction was of brick checkerboard baffling. The burner was started by means of a gas burner attached to a gas pipe. The gas burner was inserted through an opening at the bottom of the construction. When the brick work of the burner had become sufficiently heated, the consumption of the sulphur was an automatic operation, furnishing its own heat, so the gas burner was removed, leaving the gas pipe connection exposed, the end about fifteen inches from the outside of the sulphur burner (see Plaintiff's Exhibit B and Defendant's Exhibit C). The flow of gas was controlled by a valve near the end of the pipe (see Exhibit C). There was a second valve on the wall some distance from the burner. Sulphur was fed to the burner from the top, passed down over the heated brick construction, was consumed, thereby producing sulphurdioxide, which was piped from the sulphur burner and was finally converted into sulphuric acid. After the burner had been heated and was in operation, hot spots developed near the top of the construction because of a defect in the design of the burner. William Edward Smith was general superintendent of construction and redesigning of the sulphur burner for the Leonard Construction Company. He testified that he had control over all the men engaged in the work. When the defect in the sulphur burner developed, Mr. Smith was still on the job.

After the sulphur burner was started in operation, Smith observed it to see "how it was getting along." When the hot spots developed, as a result of instructions from Mr. Smith, compressed air was brought to bear on the hot spots for protection and so it could operate until plans could be made to correct the defect. To correct the defect in the sulphur burner, a hole was made in the construction some fifteen feet from the floor so that workmen could enter the burner at that point and start there to remove brick work on the inside of the burner. When entrance was made, the temperature on the inside of the burner was found too high to permit workmen to remain inside the burner for any length of time. To remedy this condition, Mr. Smith ordered one of the workmen to disconnect the compressed air hose which had been used to play on the hot spots and run air into the hole made about fifteen feet from the floor, and to insert the air hose into the bottom of the burner. The air hose came from a connection in an adjoining building to the east of the one in which the sulphur burner was located. The evidence does not indicate definitely who made the connection, but shortly after Mr. Smith had authorized the air hose to be inserted at the bottom of the sulphur tank, an employee of the Leonard Construction Company, or one of its subcontractors, attached the air hose onto the gas pipe, used for the gas burner. It had no marking to indicate it was a gas pipe. The gas was odorless. The hose was then inserted into the hole at the bottom of the sulphur tank and the valve on the gas line opened. Soon thereafter there was an explosion. Plaintiff's husband was outside the gas burner on a scaffold from which entrance was made to the manhole fifteen feet from the floor. The explosion caused deceased to be thrown from the scaffold, resulting in injury which caused his death. There is no evidence that the defendant's employees were in any manner engaged or assisting in the repairs or that they controlled or had any right to control any of the workmen engaged in repairs, nor is there evidence that the defendant knew or had cause to know that the workmen, in correcting the defects of the sulphur burner, would have cause to insert an air hose in the bottom of the sulphur tank. Mr. Smith testified that as a part of the original work on the sulphur burner the gas pipe was installed and connected to the gas burner. He knew where the gas pipe was located by which the gas burner was used to start the sulphur burner. The evidence does not show whether the workmen who were engaged in correcting the defects in the sulphur burner were the same as those who engaged in its original construction. There is no evi-

dence that a sulphur burner of the character installed by the Leonard Construction Company had ever been installed on defendant's premises before, consequently there is no evidence that the repair being made at the time of the accident or the procedure used in making it had ever been resorted to before in its plant. There is no evidence that compressed air had ever before been found necessary to cool the sulphur burner in making repairs, consequently there is no evidence that there ever had or would have been use for a compressed air pipe in the repairs but for the failure of this particular sulphur burner to operate properly, plus the particular character of the repairs required. Even then, compressed air was not necessary in the procedure of making the repairs, but only became useful as a means of expediting the repairs by cooling the sulphur burner sooner than it would otherwise. Compressed air was used in the sulphur burner operation but it was inserted at the top of the burner along with the sulphur and to expedite its combustion.

Under these facts, it is the position of defendant that it cannot be held liable, because the death of plaintiff's husband occurred in such a manner that it could not reasonably have been anticipated and would not have happened but for an exceptional combination of circumstances.

■ Actionable negligence consists of three essential elements, namely a duty or obligation of the defendant to protect the plaintiff from injury, a failure to discharge that duty, and injury proximately resulting from the failure. What duty did defendant owe the deceased under the circumstances of this case?

The following statement is from Corpus Juris, Volume 45, page 837: "The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers."

A case cited in plaintiff's brief states the applicable rule as follows: " * * * but the master must warn the servant of all dangers to which he will be exposed in the course of the employment, except those which the servant may be deemed to have foreseen as necessarily incidental to the employment in which he engages, or which may be open and obvious to a person of experience and reasonable understanding, and except also such as the master cannot be deemed to have foreseen." Marsanick

v. Luechtefeld, Mo.App., 157 S.W.2d 537, 541.

■■ Deceased, at the time of the injury resulting in death, was on the premises of the defendant at the implied invitation of the latter to perform services for it. Under these circumstances, he became an invitee, and under the Missouri rule defendant owed him the duty to use ordinary care to prevent his injury and furnish him a safe place to work. Cash v. Sonken-Galamba Co., 1929, 322 Mo. 349, 17 S.W.2d 927, loc. cit. 929. Generally speaking, defendant would be liable for injury occasioned by any unsafe condition of the premises encountered in the work, which was known to the defendant, but unknown to the deceased. Feldewerth v. Great Eastern Oil Co., Mo.App.1941, 149 S.W.2d 410, loc. cit. 413. Some of the cases hold the measure of defendant's liability is its superior knowledge of the unsafe condition and danger therefrom to the injured party. Vogt v. Wurmb, 1927, 318 Mo. 471, 300 S.W. 278; Stein v. Battenfeld Oil & Grease Co., 1931, 327 Mo. 804, 39 S.W.2d 345; 44 A.L.R. 988.

■ The rule of law upon which defendant relies has been uniformly recognized by the appellate courts in Missouri. It is that defendant cannot be held liable for negligence for failure to take precautionary measures to prevent an injury, which if taken would have prevented it, when resultant injury could not reasonably have been foreseen and would not have happened unless under exceptional circumstances. The question is not whether the accident might have been avoided, if defendant had anticipated its occurrence, but whether taking the circumstances as they existed, defendant was negligent in failing to anticipate and provide against the occurrence. The law will not hold defendant liable for an injury that could not reasonably be anticipated and guarded against by the exercise of ordinary care. In such case, insofar as defendant is concerned, the injured party assumed the risk. If the injury is not one which could reasonably have been anticipated as a sequence of the negligence charged, then the alleged negligent act is not in fact negligence. To hold the defendant liable under such circumstances would be to hold the defendant as an insurer. Lawson v. Higgins, 1943, 350 Mo. 1066, 169 S.W.2d 881.

■ On the other hand, the fact that the precise manner in which the injury oc-

curred was not foreseeable would not be a defense, if from its failure to warn by labeling the gas pipe, the defendant might reasonably have anticipated that injury of some kind would result. If the failure to warn by labeling the gas pipe or some other character of designation created a dangerous situation, and defendant should reasonably have anticipated that some one in some way would be injured as a result of defendant's failure to put a warning notice on or about the gas pipe, then a jury issue was made. Mrazek v. Terminal R. Ass'n, 1937, 341 Mo. 1054, 111 S. W.2d 26; Restatement of Torts (1934) Sec. 435.

Applying these general rules of law to the facts in this case, can the defendant be held negligent for its failure to warn that the pipe to which the air hose was connected conveyed natural gas by putting some character of designation on the pipe to that effect?

Defendant was not engaged in any way in the work of repairing the sulphur tank at the time of the explosion. The insertion of a compressed air hose into the sulphur tank at the bottom was not contemplated at the time of the construction of the sulphur tank, and had nothing to do with its operation. A gas burner (and only a gas burner) was to be inserted there. The necessary changes in the sulphur tank brought about by the defects which developed did not require the use of compressed air. It was only because of a desire to expedite the cooling of the sulphur tank that the compressed air was used. Mr. Smith was foreman of the installation of the sulphur tank, and it was at his direction that the compressed air hose was inserted in the bottom of the sulphur tank. If his workmen were inexperienced and without knowledge of their work, and if for that reason there was a probability that workmen would mistake the gas pipe for a compressed air pipe, he should have warned them at the time of giving the directions. Plaintiff states her case on this phase of the evidence as follows: "A simple hodcarrier came on the premises of the defendant, on June 3, 1941, to perform his humble duty of laying brick. It may be taken for granted that defendant knew, or was charged with knowledge, that the brick work and other manual labor would not be performed by mechanical engineers or by anyone else having technical knowledge and the fact that Mr. Smith of Leonard and Mr. Fleischer of Fleischer-Seeger knew that the blue prints showed a gas line has no bearing on this case and is not binding on plaintiff."

There is no evidence that defendant knew the contractor was using inexperienced men to do the repair work; that the men were new on the job or that they were not acquainted with the machine on which they were working, prior to the explosion. There is no basis for charging defendant with such knowledge.

Negligence in a certain sense is a question of fact for the jury. It is for the jury to determine whether the facts bearing upon the question existed or not. It is the duty of the court to determine under the law and undisputed facts if the question of negligence should be submitted to the jury. This involves no invasion of the province of the jury nor any infringement of their legitimate function. Negligence is a relative term and before the defendant can be held liable, it must be shown that he owed some duty to the deceased which he has failed to perform. Spurling v. La Crosse Lumber Co., 1920, 204 Mo.App. 29, 220 S.W. 707. We search in vain in this case for evidence that the defendant breached any duty. Taking the evidence in the light most favorable to the plaintiff, together with all the reasonable inferences to be drawn therefrom, we find that this case presents a state of facts upon which reasonable men could not fairly differ on the question as to whether the defendant exercised ordinary care under the circumstances. We do not believe that the defendant could reasonably anticipate when the sulphur burner was completed by the Leonard Construction Company that it would not operate and that thereafter it would become necessary to remove the brick work construction and that to expedite the cooling of the burner, compressed air would be introduced into the burner from the manhole at the bottom near the floor. We think the comment made by the court in the case of American Brewing Ass'n v. Talbot, 1897, 141 Mo. 674, 42 S. W. 679, loc. cit. 682, 64 Am.St.Rep. 538) applies to this situation. There the court quoted with approval the following excerpt from Ray on Negligence of Imposed Duties: "Mischief which could by no reasonable possibility have been foreseen, and which no reasonable person would have anticipated, cannot be taken into account as a basis upon which to predicate a wrong.

A reasonable man does not consult his imagination, but can be guided only by a reasonable estimate of probabilities. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what his reason and experience will enable him to forecast as probable, nor conduct, on a basis of bare chances, a business whose success is dependent upon his accuracy in forecasting the future. He will order his precaution by the measure of what appears likely in the usual course of things. The proper inquiry is not whether the accident might have been avoided if the one charged with negligence had anticipated its occurrence, but whether, taking the circumstances as they then existed, he was negligent in failing to anticipate and provide against the occurrence. The duty imposed does not require the use of every possible precaution to avoid injury to individuals, nor of any particular means which it may appear, after the accident, would have avoided it. The requirement is only to use such reasonable precaution to prevent accidents as would have been adopted by prudent persons prior to the accident. * * * The prudence and propriety of men's doings are not judged by the event, but by the circumstances under which they act. If they act with reasonable prudence and good judgment, they are not to be made responsible because the event, from causes which could not be foreseen nor reasonably anticipated, has disappointed their expectations."

The end of the gas pipe was opposite and about fifteen inches from the hole at the bottom of the sulphur burner, where the gas burner was regularly and could be readily attached to it, when its use was necessary to start the sulphur burner in operation.

█ Plaintiff insists there was a "maze of pipes" about the burner, some containing dangerous substances and some not. The exhibits (Defendant's C) show the gas pipe standing out alone (except for scaffolding pipes). No other pipe appears near the gas pipe. The gas pipe had no other purpose to serve. Compressed air served no purpose in the operation of the sulphur burner at or near that position. The location of the gas pipe was a character of notice in itself that the pipe was a conveyor of gas to anyone acquainted with the operation of a sulphur burner. Allen v. Aroostook Valley R. Co., 1916, 115 Me. 361, 98 A. 1027; State ex rel. Kansas City Light & Power Co. v. Trimble, 1926, 315 Mo. 32, 285 S.W. 455, 49 A.L.R. 1047; McGinty v. Texas Power & Light Co., Tex.Civ.App., 1934, 71 S.W.2d 354. Defendant's employees were acquainted with the operation of the sulphur burner and the use of the gas pipe and gas burner in connection with it. They required no warning that the pipe conveyed gas. Defendant had a right to assume that the contractor and its employees who had installed and were repairing the sulphur burner were acquainted with the gas pipe line, installed by them, and its use. Cole v. Jones, 1911, 159 Mo.App. 472, 141 S.W. 689. The location of the sulphur burner was not a public place nor one where the public was invited or had a right to be. It was a chemical manufacturing plant where only those with knowledge of that business were reasonably to be expected. What would be negligence in one situation might not be negligence in another. Gallagher v. City of Tipton, 1908, 133 Mo. App. 557, 113 S.W. 674.

█ We are unable to see how reasonable minds could differ on the proposition that defendant had a right to presume that the contractor and its employees, including the deceased, had superior or at least equal knowledge with defendant, of the parts, including the gas pipe, and operation of the sulphur burner prior to and at the time of the accident, under the circumstances of this case. Defendant is under no obligation to warn of dangers which deceased is deemed to have foreseen as necessarily incidental to his employment. How would defendant acquire its knowledge of the sulphur burner and the location and purpose of its various parts, including the gas pipe? We think it a fair assumption that it got its knowledge either from those who installed the equipment or from the same source as the contractor and its employees, namely, the blue prints. Had defendant gone about the work saying to this employee and that employee of the contractors, this is dangerous and that is not, one could expect such warnings to be met with the declaration, "We know it—we put it there." It would be a harsh rule, to say the least, to hold defendant liable for its failure to pass back to the contractor and its employees the information it had received from them, or information which had been common to both parties and.

which the contractor and its employees were required to obtain in the first instance to make a proper installation.

To hold the defendant negligent in this case would be to require the defendant to inspect the independent contractor's work in order to determine if it was being done in a way as to provide a safe place for the contractor's employees to work. We know of no authority for such a holding, and have been cited to none. McLaughlin v. Creamery Package & Manufacturing Co., Mo.App.1939, 130 S.W.2d 656. We also conclude from the facts that defendant could not reasonably have anticipated that some one in some way would be injured as a result of failure to place a warning on or about the gas pipe, when consideration is given to the location of the gas pipe, lack of other pipes near it, its sole use in the operation of the sulphur burner, the lack of use of compressed air at that place in the operation of the sulphur burner, and the character of the establishment in which the gas burner was located. Yarn v. Ft. Dodge R. Co., 8 Cir. 1929, 31 F.2d 717; Restatement of the Law of Torts, Negligence, Sec. 435.

Plaintiff has a remedy for loss sustained in the death of her husband. Her difficulty in this case arises in the remedy she has elected to pursue. Here she is trying to hold the owner of the premises on which the deceased was working at the time of his death, not as an employee of defendant, but of an independent contractor, when the charge of negligence is a condition, which if negligent, was created by the contractor, in the construction work deceased was engaged in and not by defendant.

We have read the authorities cited by the plaintiff. They do not deal with a situation of the kind here presented. Here we have a case where the deceased was an employee of an independent contractor, over which the defendant had no control, and the instrumentality causing his death was set up and created either by deceased or deceased's fellow employees. Defendant was not operating it or in control of it at time of the accident. It had not finally accepted it. Plaintiff would hold defendant liable because it stood by and permitted the instrumentality to remain as it was when the test run was started and while the contractor was still on the job—a period in which deceased or his fellow employees, after a lapse of not to exceed two months, returned to do repairs on their own work, including the instrumentality that caused the injuries. None of plaintiff's cases support liability on such a basis.

In the Guthrie case (Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91) the situation resulting in injury was of defendant's own doing. There was evidence its agents recognized the potential danger prior to the injury. In the Scherer case (Scherer v. Bryant, 273 Mo. 596, 201 S.W. 900.) the questions were, who was the employer of the servant whose negligence caused the injury, together with foreseeability of the acts of the servant causing the injury sued for. This case only states the general rule on the latter subject, about which the parties are not in dispute. The same is true of the Freeman case (Freeman v. Terminal R. Ass'n, 341 Mo. 288, 107 S.W.2d 36). The cases cited on plaintiff's being entitled to all reasonable inferences to be drawn from the evidence state the general rule about which there can be no argument. The case of Jamison v. Kansas City (233 Mo.App. 684, 17 S.W.2d 621, 627) is distinguishable from this case in particulars that lend weight to defendant's position. In the Jamison case, a wrongful death case, the city was constructing a sewer pumping station. It had given separate contracts for various parts of the work, particularly the construction of an electrical apparatus on the roof of the pumping station. The electrical contractor damaged the roof in carrying out its work and failed to make the repairs to the roof on request. The general contractor called the employer of deceased to make the repairs, with the knowledge of the city, and while on the roof so employed, plaintiff's husband received electrical shock, causing his death. The case was submitted "upon the theory that the city knew or could have known that it would be necessary for a person, such as deceased, to be upon the roof and in the vicinity of the apparatus, and that the situation there was dangerous (and the evidence so shows regardless as to the type of its insulation and installation) and failed to protect or guard the apparatus, and failed to place proper warning signs about the same."

In ruling on the question of liability the court said: "Although the city had not finally taken over the work from Kelly-Dennis Company, it was in the control and operation of the electrical apparatus both inside of the building and upon the roof.

24

It appears that the city made a separate contract with the Evans Electrical Company in reference to the installation of the apparatus on the roof, an inference therefore arises, as to this part of the electrical system with which the general contractor had nothing to do, that the exclusive control of this was in the hands of the city. * * * The building itself had not been entirely turned over to the city. However, we take it that the city had control of the electric apparatus including the lightning arrester boxes, the tower and the lugs. This apparatus had been completely installed and turned over to the city and the electricity turned on."

In the case being ruled, the defendant had not "finally taken over" the sulphur burner from the contractor; defendant was not in "control and operation" of the burner; defendant had no separate contracts for installing the gas pipe. The City in the Jamison case was warned at the time it took over the electrical work: "The letter instructed the city to 'install and maintain suitable 13,200 volt danger signs on the roof and in the sub-station for the protection of life,' and not to 'permit any-one to work on the roof in the vicinity of the lightning arrester or roof bushings without first having the System Operator of the Kansas City Power and Light Company open the pole top switch and discharge the lightning arrester.' "

And so the court found as to the defendant city: "It also knew when it requested the Kelly-Dennis Company to repair the roof where the bushings had been erected that some one would be required to go there for that purpose, yet it did not place any warning signs on the apparatus or warning fence around it or cause the electricity to be disconnected therefrom and the current discharged, but having every reason to believe that some workman would be sent there to repair the roof, took no precaution whatever to guard against his receiving a deadly charge of electricity. Having control of this highly dangerous agency, it failed to discharge that high degree of care that the law requires of such person."

We do not deem it necessary to comment on other cases cited by the plaintiff.

Judgment in accordance with the opinions herein expressed will be entered in accordance with Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.