## THOMAS WILLIAMS, Respondent, v. CITY OF FULTON, Appellant.

### Kansas City Court of Appeals, February 16, 1914.

1. **NEGLIGENCE: Municipal Corporations: Electric Wires.** Persons maintaining electric wires with a high degree of voltage are required to exercise the highest degree of care to prevent them from doing injury to those who may have business on the roofs or at the sides of buildings.

2. ———: ———: ———. Where a painter was painting a building from a swinging ladder attached by hooks to the guttering under the eaves, goes upon the roof for the purpose of moving the hooks and then comes in contact with an electric light wire so insulated as to permit the passing of the current, the city maintaining the wires is liable for the injury to him which followed.

Appeal from Callaway Circuit Court.—*Hon. D. H. Harris,* Judge.

AFFIRMED.

*E. L. McCall* for appellant.

*Fauntleroy, Cullen & Hay* for respondent.

ELLISON, P. J.—Plaintiff was injured by coming in contact with an electric light wire maintained by the defendant city and charged with deadly voltage. He brought this action alleging negligence in the lack of proper insulation and recovered judgment in the trial court.

It will not be necessary to go into much of the detail of statement made by the parties, and we will confine ourselves to the immediate scene of the injury. Plaintiff was engaged, with others, in painting William Woods College, the building being lighted with electricity through defendant's electric plant. That part of the college known as the dining room building, is two stories high with a slanting roof, there being a gutter at the eaves, about a foot wide. The wires entered all the buildings, our present concern being with those which attached to a dormer window on one building and thence to a high post, ran along parallel with the gutter on the dining room roof and in such position and distance from the gutter as to make possible contact with one walking along the gutter. Plaintiff and his companion were doing the work on the side of the dining room by means of a swinging platform held by ropes and hooks, the latter being hooked over the edge of the gutter. As the work progressed it became necessary to move the hooks and plaintiff went to the roof of the dining room for that purpose. He walked along the gutter leaning over towards the roof with one hand touching and sliding along it and the other hand hanging by his side. As he reached the point in the gutter where one of the hooks was attached, by some means his thumb and finger came in contact with the wire, from which he received such severe shock as to cause him to collapse and fall to the ground near thirty feet below receiving severe injury.

Several errors are claimed to have been committed by the trial court, most of them of a technical nature,

and in view of the high degree of care required in those who maintain such dangerous agencies as here involved, should not affect the result of the trial. There was abundant evidence that plaintiff was seen to come into contact with the wire, a flash was seen and he immediately fell. There was also evidence tending to show defective insulation. By reference to Geismann v. Electric Light Co., 173 Mo. 654, Winkleman v. Electric Light Co., 110 Mo. App. 188, Day v. Light & Power Co., 136 Mo. App. 274, and Freeman v. Telephone Co., 160 Mo. App. 271, it will be seen that in view of this evidence, defendant has slight room for escape from the judgment.

It was clearly proper for the court to admit evidence of the defendant's having strung the wires over the city. That was a proper foundation and introduction to the case. And there was evidence tending to show that the wires at the college had been for a long time in the condition they were at time of contact. There is no ground as matter of fact for the objection to the admission of Fisher's testimony as to identity of wire, especially when connected with other evidence. The testimony of Price tended to show the city's exercise of authority over the wires and was proper.

It is said that taking plaintiff's testimony as true that he walked along the gutter leaning over towards the roof, it would have been impossible for him to have touched the wires in the distance they were from the gutter. It is true that if some statements of the location of the wires are to be accepted as exact and other statements of plaintiff as also exact, it would be difficult to understand how he touched the wire. But it was shown that plaintiff had to walk along the gutter in a certain position in order to avoid the wires and credible witnesses saw the contact; and the result of two trials has shown a belief in the two juries that he did actually come in contact. Seemingly incon-

sistent matters, each alleged to be facts, are to be reconciled by juries and not the courts. So the evidence of a young woman is said to be incredible when she stated she saw the contact of the hand and wire and immediately a flash of fire. It may be true that she, in her concern at the catastrophe, may have conceived an exaggerated idea of the extent of what she saw, yet we discover nothing to justify us in saying that her testimony as a matter of law, should have been rejected by the jury.

We do not think any error was committed by the court in aiding in the examination of witnesses.

We are well satisfied with the court's action in refusing defendant's demurrer to the evidence on the ground of no negligence shown in the city. It is true the wires were high above the ground, but the great number of injuries inflicted by electric wires strung near the sides, or roofs of buildings, many of which find their way to appellate courts, is sufficient to show that care should be taken to protect those compelled to go near them in the performance of labor on and about buildings; and the cases already cited show the great degree of care required of those maintaining such wires.

There were some other matters of objection suggested, but nothing which would justify us in reversing the judgment, and it is accordingly affirmed.

All concur.