THE STATE EX REL. KANSAS CITY LIGHT & POWER COMPANY V. FRAN-
CIS H. TRIMBLE ET AL., JUDGES OF KANSAS CITY COURT OF AP-
PEALS, AND JOHN C. MILLER.

Court en Banc, June 14, 1926.

**1. ATTRACTIVE NUISANCE: Electric Wires: Heroic Act.** A shapely pole
to which, twenty-two feet from the ground, is attached a non-insulated elec-
tric wire, is not an attractive nuisance to a bright boy fourteen years of age.
And especially can it not be ruled that he was invited and lured to climb
the pole, where he climbed it in the performance of a hazardous and difficult
feat for the purpose of exciting the fear and admiration of some playful
girls on the street, and to appear heroic in their eyes, and was warned by
boy companions that it would be dangerous to come in contact with electric
wires.

**2. ———: ———: Contributory Negligence.** Upon a shapely pole were
standard steps eighteen inches apart; about seventeen feet from the ground
were telephone wires, and five feet above th·m was a non-insulated electric
light wire. On Halloween, about nine o'clock, a bright fourteen-year-old
boy and two companions met close to the pole, and some girls dressed as
clowns came down the street. As they came near the boy, saying, "Who
dares me to walk the wire?" began climbing the pole, using the steps, and
ascended to the telephone cables, and thereupon his companions warned
him about the live wire and told him to come down. He crawled upon the
telephone cables to a distance of about ten feet from the pole, and when
he reached that point a companion again warned him of the live wire over
his head, and threatened to throw a rock at him and knock him off if he
did not come down. Whereupon he turned about and crawled back to the
pole, and there raised himself to a standing position, and then his foot
slipped, and involuntarily he threw up his arm, his hand clutched the live
wire, and he was shocked to death. **Held,** that the doctrine of "attractive
nuisance" is not applicable, and that he was guilty of negligence as a matter
of law, and the case should not have been submitted to the jury.

Corpus Juris-Cyc. References: **Electricity,** 20 C. J., Section 40, p. 353, n.
64; Section 54, p. 373, n. 37; Section 68, p. 394, n. 94.

*Certiorari.*

RECORD QUASHED.

*William C. Lucas* and *Ludwick Graves* for relator.

The majority opinion of the Kansas City Court of Appeals is in
conflict with the last ruling decisions of the Supreme Court as fol-
lows: (1) In that it holds that there was liability on the relator.
The defendant company owed no duty to Marvin Miller, the deceased.
Kelly v. Benas, 217 Mo. 1; Glaser v. Rothschild, 221 Mo. 180.    (2)

In that it holds that the trial court did not err in submitting the case to the jury under the "attractive nuisance" doctrine, and in holding the "attractive nuisance" doctrine applicable. Rallo v. Heman Construction Company, 291 Mo. 221; State ex rel. v. Ellison, 281 Mo. 667; Buddy v. Union Terminal Railway Co., 276 Mo. 276; Kelly v. Benas, 217 Mo. 1. (3) In that it holds that Marvin Miller, an intelligent boy, fourteen years of age, and twice warned of the danger, was not guilty of contributory negligence as a matter of law. Boezel v. Wells-Fargo Co., 260 Mo. 463; McGee v. Wabash Railroad Co., 214 Mo. 530; Payne v. Railroad Co., 136 Mo. 562. (4) In that it refused to hold that the act of Marvin Miller in going into a place of danger after being fully warned thereof, and his foot slipping and his grabbing the wire was the proximate cause of the injury. Morris v. Kansas City Light & Power Co., 302 Mo. 475; State ex rel. v. Ellison, 271 Mo. 463; American Brewing Assn. v. Talbot, 141 Mo. 671.

*Henry M. Griffith, George H. Kelly, William Buchholz, I. B. Kimbrell* and *Martin J. O'Donnell* for *John G. Miller.*

(1) This court is without jurisdiction for the reason that the first judgment of affirmance by the Court of Appeals was final, because said judgment was rendered in accordance with the then existing law, and the judgment of this court on mandamus reported in 303 Mo. 284 was void for the reasons: (a) This court was without jurisdiction or power to create the duty and require its performance by the writ of mandamus which it imposed on the judges of the Kansas City Court of Appeals. It was without power to change the existing law and substitute a new law in its stead. (b) John G. Miller could not properly be a party to the said mandamus proceeding for the reason that this court had no jurisdiction to consider any issue that he could raise and hence it was without jurisdiction to deprive him of his property unless he could raise issues concerning his rights in the judgment. Hargadine-McKittrick Dry Goods Co. v. Garesche, 227 S. W. 824. (2) Relator, by electing to proceed in this court by way of mandamus in cause number 26477 now pending in this court and submitted on November 13, 1925, has by virtue of the doctrine of election of remedies precluded itself from pursuing the remedy by *certiorari* after having pursued the remedy by mandamus. Article on Election of Remedies, 20 C. J. 1. (3) This proceeding should be stayed pending the disposition of the suit in the Federal courts. Johnson v. American Surety Co., 292 Mo. 521. (4) There is no conflict between the opinion of the Court of Appeals and any previous opinion of this court, and none of the cases cited by relator are based upon the same or a similar state of

315 Mo.—3.

facts and hence there is no conflict.   State ex rel. Ins. Co. v. Allen, 303 Mo. 618; State ex rel. v. Trimble, 271 S. W. 43.   (5)   While expressions have been used in the opinion herein concerning the attractive nuisance doctrine, yet that doctrine has really no application to the facts in this case.   Davoren v. Kansas City, 273 S. W. 401.

GRAVES, J.—*Certiorari* to the Kansas City Court of Appeals on the ground of conflict of opinions.   The case out of which this proceeding grows (John G. Miller, Respondent, v. Kansas City Light & Power Co., appellant) has had a long and checkered career.   When the case of Miller v. Kansas City Light & Power Co. was tried in the Circuit Court of Jackson County, the plaintiff had judgment for $7,000.   The defendant appealed to the Kansas City Court of Appeals, and there (without going into the merits of the case) the judgment was affirmed upon an alleged defect in appellant's abstract of record, without a consideration of the merits of the case.   The Kansas City Light & Power Company, as relator, in State ex rel. v. Trimble, 303 Mo. 284, asked this court, by its writ of mandamus, to compel the Kansas City Court of Appeals to hear and determine the case upon the merits.   We ruled that the record was sufficient, and by our writ of mandamus compelled the Kansas City Court of Appeals to determine the case upon the merits.   [State ex rel. v. Trimble, 303 Mo. 284.]   Later the court did undertake to determine the merits, and by a majority opinion affirmed the judgment of the circuit court.   To this opinion Judge TRIMBLE filed a vigorous dissent.   Notice was given that application would be made for a writ of *certiorari* to this court.   To thwart this action, Miller, the plaintiff, sought an injunction in the U. S. District Court at Kansas City, to prevent the prosecution of an application for a writ of *certiorari* in this court.   A temporary restraining order was issued, but upon motion such order was dissolved within a few days, and the application for our writ of *certiorari* was, within due time filed, prosecuted, and our writ granted.   Later the said Miller appealed to the United States Court of Appeals for the Eighth Circuit, and this appeal had been argued, and was pending when we heard the argument here, in the instant case.   We delayed opinion out of respect for the U. S. Court of Appeals.   Our opinion in State ex rel. v. Trimble, 303 Mo. 284 (in the U. S. Court of Appeals), was severely criticized by and through the youthful exuberance of counsel for Miller, but the court, meeting all contentions of counsel, fully sustained our opinion. [Miller v. Kansas City Light & Power Co., 13 Fed. (2 d) 723.] Being temporarily restrained from filing an application here for writ of *certiorari*, counsel for the Light & Power Company filed an application for and got our alternative writ in mandamus to compel the Kansas City Court of Appeals to certify the case of Miller

v. Kansas City Light & Power Company to this court. Such case is here, and has been argued, and is our number 26477. We are concerned, however, solely in the disposition of the case in *certiorari*, as the mandamus case fell to another. So much for preliminary history. In this case there is a plea to our jurisdiction, all of which was fully threshed out by VAN VALKENBURGH, Circuit Judge, in the U. S. Court of Appeals, supra. The question needs no further notice by us in view of the elaborate opinion of Judge VAN VALKENBURGH, which had the full concurrence of that court. We shall not discuss this dead issue.

I.  There are two opinions in the case out of which this proceeding grows. Judge TRIMBLE filed a vigorous dissent, in which the law of the case (in our judgment) was written. However, in this proceeding in *certiorari* we go to the majority opinion for the facts. Much is said in the majority opinion about our opinion in the first mandamus case, but this has nothing to do with the real matter in issue here now. However, in passing it will suffice to say that the majority opinion has wholly misconceived our cases, as is thoroughly demonstrated by the learned opinion of Judge VAN VALKENBURGH, supra. We quote in full the facts from the majority opinion, as follows:

"Proceeding now to a consideration of the case on its merits, we find the record discloses the following:

"At the time of his death Marvin Miller was an unmarried minor past fourteen years of age. He was bright, intelligent, healthy and did well in his school. In summer he lived with his father on a farm in Platte County, and from the time he was seven or eight years of age he had resided during the winter months with his sister at 5012 Walrond Avenue and attended school in Kansas City, Missouri. He met his death at about 9:15 P. M. October 31, 1919, upon a telephone and electric light pole set in the parking on the south side of Forty-ninth Street and a little east of its intersection with Walrond Avenue. Forty-ninth Street runs east and west and intersects Walrond Avenue at right angles. The night was rainy and misty.

"The pole upon which the boy lost his life was the property of the Kansas City Home Telephone Company. The line of poles of which this was one ran east and west on the south side of Forty-ninth Street, and the poles were set in the parking space between the sidewalk and the pavement. About seventeen feet from the ground, the Missouri & Kansas Telephone Company (known as the Bell System) had attached to the south side of said pole and running east and west, a hundred-pair cable one and five-eights inches in diameter, encased in lead armor, said cable being supported by means of rings by a five-sixteenth-inch messenger wire. This messenger wire was

fastened to the pole. Just opposite the Bell cable and parallel thereto the Home Telephone Company had a similar cable similarly attached to the pole, and at the same height from the ground.

"The Home Telephone Company had placed iron steps on the pole, alternating the north and south sides thereof, beginning ten feet from the ground and extending up as far as the telephone cables only. These alternating steps were about eighteen inches apart and in climbing the pole one took an eighteen-inch step. Later the Bell Telephone Company placed wooden cleats or steps on the pole beginning about eighteen inches from the ground and alternating on the east and west sides thereof up to where the iron steps began. So that it was necessary for a climber to go first up the wooden steps thus located to the iron steps, and there swing around and continue the ascent on the iron steps located on the north and south sides of the pole as above indicated.

"At the very top of the pole and at a distance of four or five feet above the telephone cables was attached a glass insulator carrying a single arc-circuit wire of the Kansas City Light & Power Company for street lights, and which lighted the street light on the corner at the west side of Walrond Avenue. This light wire was parallel with the telephone cables.

"The evidence shows that when the Kansas City Light & Power Company originally put this wire there it was covered with a waterproof insulation, consisting of a burlap cloth wrapping saturated with a ruber-compound insulating material; but at the time of the accident the insulation was entirely missing for a distance of about one foot from the glass insulator on the top of the pole.

"On Halloween, 1919, about nine o'clock, some Girl Scouts were having a party in a house across the street from the light pole in question. Marvin Miller and two other boys had met in the middle of the block below and walked to the corner where they stood listening to the music from the party, when two girls dressed in clown costume came down the street. As they came near the boys Marvin began climbing the pole and ascended to the telephone cables and on them crawled out on his hands and knees to a point eight or ten feet from the pole. He then was warned by his boy companions to come down as the wire above his head was a 'live wire.' He disregarded the warning and was again admonished to come down, and this time the warning was accompanied by a threat to throw a rock at him and knock him off. He then came back to the pole, and as he raised himself to an upright position his foot-slipped, and he reached up over his head and grasped the light wire with his right hand. Immediately sparks were emitted from his hands and feet. He fell and became entangled in the telephone cables, where he hung for a period of about an hour, or until removed by members of the

city fire department. When taken down his life was extinct. The flesh had been burned from his right hand, one foot was badly burned, and a hole burned through the sole of his rubber shoe.

"As stated the suit originally was brought against this appellant and the telephone companies. For a consideration of $1,500, suit was dismissed as to the telephone companies and proceeded against the Kansas City Light & Power Company, appellant herein. The cause was tried to a jury, resulting in a verdict and judgment for $7,000, and, as above stated, defendant appealed.

"The petition formally described the location of the wires so located, and [alleged that] the steps so placed constituted an invitation to children to climb said pole and come in contact with said wires; and alleged 'that at all times herein mentioned there was in force and effect a certain ordinance of Kansas City, Missouri, duly passed by the common counsel of said city on the 31st day of January, 1910, and approved by the mayor of said city on the second day of February, 1910, which said ordinance is entitled, Revised Ordinances of Kansas City of 1909. Section 1060 of said ordinance provided: "All telegraph, telephone, electric light companies and all persons and partnerships doing business in the city of Kansas City by erecting poles for the purpose of carrying electric wires over or through the streets and alleys of Kansas City, are hereby subject to the regulations hereinafter provided." Section 1062 of said ordinance provided: "The poles used as herein provided shall be of sound timber, not less than five inches in diameter at the upper end thereof, shapely and of uniform size, neatly planed or shaved, thoroughly coated with two coats of lead and oil paint of such colors as may be directed by the Board of Public Works and to be supplied with iron steps commencing twelve feet from the surface of the ground, and reaching to the cross-arms supporting the wires. Said wires shall be run at a height of not less than twenty-five feet of the grade of the street or alley upon which the same are erected." '

"The negligence charge is that 'defendant negligently erected and maintained, used and adopted for use in their business said pole, with the steps thereto attached, commencing at a height of about two feet from the ground, in direct violation of the foregoing provisions of said ordinance. That said Marvin Miller was injured and killed, as aforesaid, by reason of the negligence of said defendants in attaching steps or climbers to said pole and maintaining and using said pole with said steps thereon, when said defendants knew, or by the exercise of ordinary care could have known, that said steps enabled the deceased to climb said pole and to come in contact with said wires and thereby exposed the said deceased and boys of his age, experience and capacity to injury and death from said electric wires, and when said defendants knew, or by the exercise of ordinary care could have

known, that said pole with the steps and wires thereon and thereto attached were attractive to deceased and boys of his age, experience and capacity, and constituted an invitation and lure to deceased and such boys to climb upon such pole and come in contact with said wires, and thereby to occasion his death or injury. Defendants were also negligent in that they also omitted to cover the said electric wires with reasonably safe insulation material so as to prevent the electric currents with which said wires were charged from injuring persons coming in contact with said wires.'

"Damages were sought in the sum of $10,000. The separate answer of the Light & Power Company contains a general denial and a plea of contributory negligence of deceased."

Later on the court says: "The case was tried on the theory of attractive nuisance." The whole record shows that the case was one tried as an attractive nuisance case. So much for the facts necessary for our disposition of the case.

II. The dissenting opinion of Judge Trimble is bottomed upon two grounds (1) that the majority opinion extends the attractive nuisance doctrine far beyond the limits fixed by this court, and pertinently cites our opinions, and (2) that considering the age and accomplishments of the boy, he was guilty of contributory negligence as a matter of law. He discusses the facts found by the majority opinion, and we quote in full what he says:

"It appears from the evidence in plaintiff's behalf that the wooden cleats and iron spikes on the pole constituted the 'standard stepping' adopted by the American Telephone & Telegraph Company, the Association of American Railway Superintendents, the National Electric Light Association and the United States Bureau of Standards. The telephone cables were seventeen feet above the ground, and the electric light wire was five feet above these cables or twenty-two feet from the ground, and the steps did not go higher than the cables.

"The negligence charged was (1) the maintenance and use of the steps and pole so as to constitute an 'attractive nuisance' or a 'lure' to deceased and to boys of his age and experience to climb thereon; (2) the failure to keep the wire sufficiently and properly insulated. And the case was submitted in an instruction embodying both of these specifications of negligence.

"It would seem that unless the pole, as maintained, constituted an attractive nuisance or a lure to boys to climb it, the failure to keep the wire sufficiently insulated would not constitute negligence in this case or as to deceased, since the wire was twenty-two feet above ground and high out of reach except, of course, to one having legitimate business up there. So that the question of defendant's liability in this case must depend upon whether the pole as main-

tained, constituted an attractive nuisance, and upon the closely allied question of whether deceased was guilty of contributory negligence, and, at this state of the case, this last means whether he was guilty of such negligence as a matter of law.

"Now, there is no evidence in the record showing that the pole, as it existed, presented an attractive lure to boys to climb or play upon. Indeed, the evidence shows that boys did not climb such poles or at least that the boys in the neighborhood were not in the habit of doing so. The photographs in evidence do not show the pole possessed any such attraction, unless it is to be held that wherever climbing is made at all possible, that, in and of itself, is an attractive lure to boys to exercise their climbing abilities. Furthermore, the evidence, instead of tending to show that the boy was allured by the opportunity afforded by the cleats to climb, tends rather to show that he did so in the endeavor to do something startling and dangerous in an effort to attract the attention of the girls who had just arrived at the place. The boy and his companion had been there for some little time, though it is not shown how long, and no thought of climbing the pole was entertained until the girls came along the walk where the boys were, and then deceased suddenly ran to the pole and began climbing up it, calling out to his audience or spectators, 'Who dares me to walk the wire?' When he reached the cables, his companion warned him about the live wire and told him to come down. Whereupon the boy started along the telephone cables on his hands and knees to a point about ten feet out from the pole. When he reached that point, his boy companion again warned him of the live wire above his head, and threatened to throw a rock at him and knock him off if he didn't come down. Thereupon deceased turned about and came back to the pole where he raised himself to a standing position, and then his foot slipped, and involuntarily he threw up his arm and clutched the live wire and was shocked to death.

"To my mind it is inconceivable that a bright, intelligent boy, doing well in school, past fourteen years of age and living in the city, would not understand and appreciate the fact that it would be dangerous to come in contact with an electric wire, and that he was undertaking a dangerous feat in climbing up the pole; but even if it may be said that men might differ on that proposition, still in this case he was warned of the wire and of the danger on account of the wire and that, too, before he had reached a situation where there was any occasion or necessity of clutching the wire to avoid a fall. Not only was he twice warned but he was repeatedly told and urged to come down. Yet he persisted, and thereafter placed himself in a position whereby the slipping of his foot caused him to involuntarily clutch the wire to avoid a fall. In other words, there

was nothing about the pole which was inviting to him to go up it and play there. It was the unusual and hazardous nature of the feat that prompted him to do it in order that he might be a hero in the eyes of the girls and perhaps excite their fear and dismay at his situation. If, however, it can be said that the steps on the pole plus the presence of the girls made the former a lure to a boy to climb it, nevertheless there remains this unescapable fact that it was the hazard and difficulty of the feat plus the desire to appear heroic in the eyes of his girl friends that induced him to go up the pole, and that he was not only himself aware that it was dangerous but was earnestly and emphatically warned of it.

"In the case of Mayfield Water Co. v. Webb's Admr., 111 S. W. 712, there were two guy-wires running to the ground at an angle of forty-five degrees, one of said wires being above the other in such way that children could climb the wire and, holding on to the upper one, with their feet on the lower wire, could slide down to the ground. In other words, this was an attractive place for children to play thereon, and yet the defendant was not held liable.

"In the case of McCoy v. Texas Power & Light Co., 229 S. W. 623, defendant had erected a tower on plaintiff's land which could be climbed pretty much as this pole was, and on which it had strung high-power wires, and plaintiff's fourteen-year old son did so and was killed; defendant was held not liable, although it would seem that the boy was not aware of the danger from the wires. [See also the cases of Weatherby v. Twin State Gas & Elec. Co., 75 Atl. 8; Graves v. Washington Water Power Co., 87 Pac. 956; Roche v. New York Edison Co., 146 N. Y. Supp. 294; Simonton v. Citizens Power Co., 67 S. W. 530; Anderson v. Fort Dodge Railroad Co., 130 N. W. 391; Hardy v. Missouri Railroad Co., 266 Fed. 860; McCaffery v. Concord Electric Co., 114 Atl. 395; State to use of Stansfield v. Chesapeake Tel. Co., 123 Md. 120.]

"Our Supreme Court has refused to extend the 'attractive nuisance' doctrine beyond the turntable cases. [State ex rel. v. Ellison, 281 Mo. 667, 681; Buddy v. Union Term. Ry. Co., 276 Mo. 276, 287; Kelly v. Benas, 217 Mo. 1.] And, as I view it, the pole in this case cannot be said to be an attractive nuisance or such as to lure children to play thereon within the meaning of that term as used in the turntable cases. And as stated above, it was not the attraction of the pole as maintained, but it was the desire to do something unusual, hazardous, difficult, or heroic and thus appear well in the eyes of the girls, that induced the boy to undertake his reckless and dangerous feat.

"Cases wherein wires were stretched close to trees which were easy to climb and which children did climb and play thereon, do not seem to me to be in point, for it is well known that boys are fond of

climbing trees and of playing therein; and in doing so they are not expecting to come in contact with a deadly wire. The facts in this case are wholly different.

"Again, if under the circumstances of this case, deceased is to be absolved of the charge of contributory negligence and defendant is to be held liable, then certainly defendant is an out-and-out and an absolute insurer, and can be held liable wherever wires are maintained at places where the activities of a boy past fourteen years of age make it possible for him to climb.

"It seems to me that the boy was conclusively guilty of contributory negligence. [Boesel v. Wells Fargo & Co., 260 Mo. 463, 478; McGee v. Wabash R. Co., 214 Mo. 530, 546; Payne v. Chicago R. Co., 136 Mo. 562; Frauenthal v. Laclede Gas Light Co., 67 Mo. App. 1; Powell v. Missouri Pac. R. Co., 76 Mo. 80; Johnston v. New Omaha Light Co., 17 L. R. A. (N. S.) 435.]

"For the reasons above given, I respectfully dissent."

On the question of extending the attractive nuisance doctrine, the majority opinion conflicts with our cases, duly cited by Judge TRIMBLE. On the doctrine of contributory negligence as a matter of law, the majority opinion likewise conflicts with those of our cases cited by Judge TRIMBLE. In fact the plaintiff never had a case for submission to a jury.

For the conflicts pointed out the opinion and record is quashed. All concur.