STATE OF MISSOURI at the Relation of MISSOURI ELECTRIC POWER COMPANY, a Corporation, Relator, v. PERRY T. ALLEN, WALTER E. BAILEY and ROBERT J. SMITH, Judges of the Springfield Court of Appeals.—100 S. W. (2d) 868.

Division One, December 14, 1936.

*Henson & Woody* for relator.

46

*Clyde H. Snider* for respondents.

HAYS, J.—In this proceeding, which has recently come to the writer on reassignment, relator seeks by certiorari to quash the opinion of the Springfield Court of Appeals rendered in the case of Dr. J. C. B. Davis, Administrator of the Estate of Orville Butler, deceased, respondent, v. Missouri Electric Power Company, a corporation, appellant (relator here), reported in 88 S. W. (2d) 217.

The relator urges that the respondent judges had no jurisdiction to determine this cause because the constitutionality of Sections 7950 to 7956, both inclusive, Revised Statutes 1929, was directly involved. Said sections, referred to in its answer, constitute one act of the General Assembly of 1917, and appear at page 479 of the Session Acts of 1917.

As appears from respondents' opinion, the suit grew out of the death of Orville Butler, caused by shock from electricity which came from a high-tension wire of the relator, carrying 22,000 volts. The deceased was employed as a laborer by the State Highway Commission. He was assisting in moving a tool shed of the Highway Commission within the corporate limits of Mountain View in Howell County, said shed being loaded upon an automobile trailer and being moved along and off State Highway No. 60, in that city.

Butler met his death while on the roof of the shed. Just prior to receiving the shock that killed him, he had with a stick lifted a low-tension wire of the relator over the roof of the shed, while astride same, and attempted to step over the low-tension wire when he was killed by a current that leaped or arced from said uninsulated wire. Said low-tension wire was a few feet beneath the high-tension wires. This occurred just as the building was being moved under the wires and to its new location nearby.

The basis of recovery was that defendant allowed its high-tension wires to remain uninsulated whereby deceased received the electric shock that killed him.

The defendant answered by a general denial and a plea of contributory negligence, with which were coupled special pleas to the effect (1) that neither deceased, nor any one else, had filed application for a permit, or had received a permit, from the county clerk to move the building along and across said highway, as required by Section 7951, Revised Statutes 1929 (Mo. Stat. Ann., p. 6801) ; (2) that defendant had neither notice nor knowledge that deceased and others would move or were moving said building under its wires or were interfering or molesting the same; (3) deceased was not experienced in handling electric wires and was not such a person as required by Section 7953, Revised Statutes 1929 (Mo. Stat. Ann., p. 6801), to handle or work in close proximity to such wires then and there existing; (4) that deceased, in moving and molesting said wires, was violating the special provisions of Section 7954, ·Revised Statutes 1929 (Mo. Stat. Ann., p. 6802), and was committing a misdemeanor under Section 7956, Revised Statutes 1929 (Mo. Stat. Ann., p. 6803)—all of which is more specifically set out in said opinion.

By reply the plaintiff set up that said statutes were violative of certain specified provisions of the State and Federal Constitutions.

The relator has briefed and presented this proceeding on two theories, viz.: First, a constitutional question being inherently involved; and, secondly, the appeal having by the trial court been mistakenly allowed to the Court of Appeals, this court should decide the case as though it had been appealed to this court in the first instance. Holding the view that the determination of the first question necessarily determines the latter, and within the proper limits of certiorari, we consider the matter of quashal only; and that matter upon the reasons assigned therefor, in the brief of relator, thus:

(1) Because the holding and ruling of that court that the constitutionality of said Sections 7950 to 7956 was not in issue, is in direct conflict with the decisions of this court in State ex rel. Curtice v. Smith et al., 177 Mo. 69, 75 S. W. 625; Schildnecht v. City of Joplin, 327 Mo. 126, 35 S. W. (2d) 35; Syz v. Milk Wagon Drivers' Union, 323 Mo. 130, 18 S. W. (2d) 441; State ex rel. v. Nolte, 315 Mo. 84, 285 S. W. 501; State ex rel. Mulholland v. Smith et al., 141 Mo. 1, 41 S. W. 906; State ex rel. Smith v. Smith et al., 152 Mo. 444, 54 S. W. 218.

(2) Because the holding and ruling of the respondents that plaintiff was entitled to recover, is in direct conflict with holdings of this court in the cases of Weller v. C. M. & St. P. Ry. Co., 120 Mo. 635, 23 S. W. 1061; Barney v. H. & St. J. Ry. Co., 126 Mo. 372, 28 S. W. 1069.

■ With respect to the first contention, the Court of Appeals' opinion, supra, states: "The question of the constitutionality of the statutes was not raised at any time in the trial court by the defendant in its pleadings, nor in its motion for new trial, nor in its motion in arrest of judgment. So far as the defendant, the losing party in the trial below is concerned, the constitutional question is not raised, and is not properly before this court, yet the defendant does present it in its first point under its points and authorities; and the plaintiff is not pressing here the constitutionality of the statutes. . . . The record fails to show any exceptions saved, as to the trial court's ruling thereon, and certainly there was no complaint made by the defendant in its motion for new trial or in its motion in arrest of judgment. . . . The Supreme Court . . . has repeatedly and definitely held that it must appear from the record that a constitutional question is essential to the determination of the case, or that the constitutional protection was expressly invoked by the losing party, and denied by the trial court, and exceptions thereto saved by the losing party, and properly presented for review by that party. [State ex rel. v. Smith, 176 Mo. 44, 48, 75 S. W. 468; Brown v. M., K. & T. Ry. Co., 175 Mo. 185, 188, 74 S. W. 973; Syz v. Milk Wagon Drivers' Union, 323 Mo. 130, 18 S. W. (2d) 441, 443; . . . State ex rel. Rose v. Webb City, 333 Mo. 1127, 64 S. W. (2d) 597, 600, and cases cited.]"

■ If that court's recital of the exception record is correct, the conclusion reached and stated in the above quotation is eminently right and proper. But the relator contends that the court's summary of that record is incomplete, and upon that basis contends that relator raised the constitutional question (1) by demurrers to the evidence; (2) by motions for new trial and in arrest; and (3) that plaintiff's principal instruction, No. 1, assumed the deceased was engaged in a lawful act at the time of his death, and such assumption was in direct conflict with said statutes.

An examination of those motions, as referred to in the opinion, and of the exception record relative to said instruction which is set out in the opinion, discloses the following: In so far as the motions pertain to the question of conflict now under consideration, the one for new trial avers error in merely the court's refusal "to give to the jury defendant's demurrers to the evidence, offered at the close of plaintiff's case and at the close of the whole case;" while the motion in arrest asserts that "under the pleadings and proof adduced thereunder no valid judgment can be rendered in favor of the plaintiff against the defendant," and "the verdict of the jury and the judgment of the court are in direct conflict with the law." Instruction No. 1 neither makes mention of the subject matter, or of the terms of any of said statutes, nor makes any allusion thereto but ignores the same. It is thus manifest that if the reply raised a con-

stitutional question those motions were insufficient to preserve error in respect of the court's ruling or—more correctly stated—failure to· rule such question.

In the Rose case, last supra, this court had before it the question of jurisdiction in the appellate sense. In the opinion there we took occasion to review the decisions referred to in the Court of Appeals' opinion, supra, and other cases of which some are included in relator's citations above.

█ The plaintiff's cause of action was a common-law action on the case, not an action based upon statute. The petition tendered no constitutional question. The answer set up several separate issues, distinct from the averred application of the statutes which were. only in part relied upon as a defense.and were not relied upon as, alone, decisive of the case. In the Rose case (333 Mo. 1. c. 1131, 64 S. W. (2d) 597) we pointed out the importance of the singleness or the entirety of the issue or, on the other hand, the plurality and diversity of issues, as determinative of whether a constitutional question inheres or is essentially in the record and, accordingly, whether, in the latter situation, it needs to be *specifically* saved and kept alive, and we held that it must needs be. The relator failed to do that in the mode required by the well-established rule. Our ruling there controls the determination of the issue at hand. Relator did not raise the constitutional question, was not concerned with it, and in respect of it was concerned only in the statutes being applied by the court to the facts. The relator did not, as the losing party, timely or in any manner seek in the trial court the protection of ·the Constitution, nor was such protection denied relator—all of which was essential in order that the case might involve a constitutional question, as was substantially ruled in the Rose case and in decisions of this court intermediate between that case and the early case of Ash v. Independence, 145 Mo. 120, 46 S. W. 749, and comprehensively reannounced in. Brown v. M., K. & T. Ry. Co., 175 Mo. 185, 1. c. 188, 74 S. W. 973, in language much the same as we have here employed.

Furthermore, it is quite apparent that the trial court, and the Court of Appeals also, merely placed their like interpretations upon the statutes, found that the statutes were not applicable to the facts, further found that the action was governed. by common-law principles, and upon that basis determined the case. Unquestionably it was within their constitutional powers so to do, and no citation of authority is needed to support this pronouncement; unless respondents' interpretation of the statutes conflicts with the interpretation which this court may have placed upon them in some controlling decision or decisions. The relator cites the case of Laudwig v. Power & Light Co., supra, as conflicting with the opinion in question and from which the opinion quotes extensively. For reasons which will presently appear we are of opinion there is no such conflict; and

also no conflict—as relied upon in relator's second ground for quashal—in respect of the interpretation of the penal clause of the statutes as between the questioned opinion and the two decisions which are cited by relator and to which reference will be made in deciding that contention. A consideration of these matters will be aided by a statement of the substance of the pertinent statutes.

Section 7950 commands, "No *person, firm* or *corporation* shall move, haul or transport any house, building or other structure upon, across or over any public highway outside of the limits of any city of the first, second or third class . . . without first obtaining a permit therefor" from the county court. Section 7954 makes the violation of that command unlawful, and Section 7956 makes such violation a misdemeanor. (Italics ours.) As is apparent, we have emphasized the legal entities to whom and to which the command is directed, for the reason that the statute, being penal, can be given no broader application than as indicated by the terms thereof, which are to be interpreted, under established rules governing the construction of statutes of a penal nature, according to their usual and ordinarily accepted meaning.

Hitherto our court has substantially held (State ex rel. State Highway Commission v. Bates, 317 Mo. 696, 296 S. W. 418; State ex rel. McDowell, Inc., v. Smith, 334 Mo. 653, 656, 67 S. W. (2d) 50) that while the State Highway Commission is a quasi-corporation—that is to say, it partakes of the nature and has some of the attributes of a corporation—it is essentially an agency of the State and as such exercises broad administrative powers in the public interest. Among such powers, provided by the Legislature, are these: Sections 8115 and 8134 provide that the State highways shall be under the jurisdiction and control of the commission, and the commission "shall maintain such roads . . . keep them in a good state of repair." To that end the commission may acquire necessary tools, machinery, etc., and labor for the proper repair and maintenance of such roads. Under Section 8109 the power to determine the location and removal of all telephone, telegraph and electric light and power wires is given the commission to a stated extent, and the failure to obey its order in relation thereto is made a misdemeanor.

In view of these statutory provisions it would seem anomalous indeed to conclude that the commission was under any duty to apply to the county court for permission, and subject to penalty for failure to do so, in the matter of removing the tool house referred to above, a work which was incident to and in aid of maintenance of such highways. The deceased as a servant of the commission stood in the same relation that the commission stood to the relator, hence neither was he under such supposed duty. Those statutes support respondents' opinion.

The Laudwig case, 324 Mo., supra, does not hold to the contrary,

nor does its holding imply that the penalty section relied upon by this relator would defeat a cause of action such as plaintiff's, nor was the deceased committing a misdemeanor which act might defeat this cause of action, as in Barney v. H. & St. J. Ry. Co., supra, and Weller v. C. M. & St. P. Ry. Co., supra, cited by relator in its second contention.

The Laudwig case, supra, is distinctly and essentially different from this case in but the one respect that plaintiff there was an individual, engaged in the business of moving houses, and within a class specifically designated in the statutes. In that case, 324 Mo. supra, our court en banc said (1. c. 684), in language quite apropos to the issues now under discussion:

"However, even though it be conceded that plaintiff was a trespasser and was violating the law by failing to obtain a permit to move the house, there was no causal connection between his failure to obtain a permit and the cause of his injury. It is doubtful that the statutes named include telephone companies as they refer to electric wires only. But be that as it may, it was unnecessary to cut the telephone wire to move the house thereunder, and it is probable that, had not the plaintiff been on the roof, a telephone company's employee would have been there lifting its wire in the same manner. [Citing cases.] Even if the evidence showed that plaintiff did not have a permit, it did not demonstrate that the injury would or could have been prevented. It would go no further than demonstrating that, if plaintiff had not been on the roof, he would not have been injured." [Citing.]

And so it seems plain that conflict with this court's decisions as alleged does not exist. It follows that our writ should be quashed. It is so ordered. All concur.